| | | |
|---|---|---|
| EDSON T. MUSEMA<br>9110 Abigail Drive, Apartment 1C<br>Rosedale, Maryland 21237 | *<br><br>* | IN THE<br><br>CIRCUIT COURT |
| Plaintiff, | * | FOR |
| v. | * | BALTIMORE CITY, |
| BALTIMORE CITY POLICE DEP'T.<br>601 East Fayette Street<br>Baltimore, Maryland 21202 | *<br><br>* | MARYLAND |
| Defendant | * | Case No.: 24-C-17-006158 |
| Serve on:<br>  Kevin Davis<br>  Police Commissioner<br>  Baltimore City Police Department<br>  601 East Fayette Street<br>  Baltimore, Maryland 21202 | *<br>*<br><br>*<br><br>* | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

COMES NOW, Edson T. Musema, by and through his attorneys, Paul V. Bennett, Esq., Elizabeth A. Marcus-Wenger, Esq., and Bennett & Ellison, P.C., and hereby sues Baltimore City Police Department and in support thereof states:

### JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. (hereinafter referred to as "Title VII").

2. That all actions complained of herein took place in Baltimore City, Maryland.

3. Defendant, Baltimore City Police Department, is located in Baltimore City.

4. That at all relevant hereto, Defendant Baltimore City Police Department was a business entity employing fifteen (15) or more persons, and is an "employer" within the meaning of Title VII.

1

5. In accordance with Title VII, Plaintiff timely filed a Charge of Discrimination and Retaliation with the Baltimore Community Relations Commission on July 22, 2015, which was contemporaneously cross-filed with the U.S. Equal Employment Opportunity Commission. On September 1, 2017, a Notice of Right to Sue was issued by the U.S. Equal Employment Opportunity Commission. Plaintiff received said Notice on September 11, 2017. Therefore, Plaintiff has properly exhausted his administrative remedies before timely filing suit.

## FACTS COMMON TO ALL COUNTS

6. Plaintiff's race is black.

7. Plaintiff's national origin is the Democratic Republic of Congo.

8. Plaintiff was hired by Baltimore City Police Department on or about March 27, 2008 as Police Officer.

9. At the time of Plaintiff's filing with the Baltimore Community Relations Commission, Plaintiff was a Police Officer with an annual salary of approximately sixty-eight thousand ($68,000.00) and employment benefits including health insurance, deferred compensation, pension, short term disability, life insurance, sick time, and vacation time.

10. At all times from Plaintiff's employment in 2008 through the present, Plaintiff received a satisfactory or better on his performance appraisals. Further, he never received any disciplinary corrections until Spring of 2015, events leading to this Complaint, and has not received any since. Therefore, Plaintiff always met or exceeded his employer's legitimate expectations.

11. From approximately 2011 to 2013, Plaintiff's immediate supervisor was Sgt. Alexander Lee (Asian, American). From 2013 to 2016, Plaintiff's immediate supervisor was Sgt. Daryl Smith (black, American).

12. Sgt. Tashawna Gaines (black, American) did not supervise Plaintiff directly at any given time. However, she was a higher rank than him, giving her automatic oversight over Plaintiff, and came into contact with him frequently when they were both assigned to the North-East section.

13. Later, Sgt. Gaines became a member of the Special Investigations Response Team (SIRT).

14. In July 2011, Officer Musema's wife became ill and was hospitalized. Sgt. Gaines ordered Officer Monica Cooper (black, American), who was serving as Officer in Charge, to order Plaintiff to return to work. Plaintiff complied, leaving his wife at the hospital alone. When Plaintiff reported to the station, Sgt. Conard Hendricks (Caucasian, American) asked Plaintiff why he was at the station when his wife was hospitalized. Plaintiff explained that Sgt. Gaines ordered him to report. Sgt. Hendricks instructed Plaintiff to leave and go to the hospital to be with his wife.

15. Later, in 2011, Plaintiff requested a transfer away from the North-East District in order to not be based in the same division as Sgt. Gaines. Approximately ninety (90) days after his request, Plaintiff's transfer request was granted. He was transferred to the North-West section.

16. In 2013, Plaintiff applied to the Louisville, Kentucky Police Department.

17. On or about March 6, 2014, Plaintiff was on duty and a passenger in a police vehicle. The driver, Jason Jukam, (Caucasian, American), passenger, Elliott Cohen (Caucasian, American), and Plaintiff responded to a report of a stolen vehicle and followed the subject vehicle. The driver of the subject vehicle reversed his vehicle towards the police officers' vehicle. Plaintiff and Officer Cohen exited the vehicles. At this time, the vehicles colided.

Plaintiff ordered the suspect to stop fleeing. The subject refused. Plaintiff fired his service weapon and the suspect was subdued, allowing Plaintiff to take him into custody.

18. Because Plaintiff fired his service weapon, Plaintiff was directed to give a statement to the Internal Affairs Department. However, the Fraternal Order of Police told him not to give a statement.

19. Shortly thereafter, Sgt. Gaines became in charge of the investigation.

20. In July of 2014, the Louisville Police Department contacted Sgt. George Stiemly (black, American), Baltimore City Police Department, regarding Plaintiff's application. Sgt. Stiemly informed Louisville Police Department that Plaintiff was still being investigated.

21. Based on Plaintiff's knowledge, information, and belief, an investigation such as this would not normally last several months. Based on Plaintiff's knowledge, information, and belief, Sgt. Gaines intentionally kept this investigation open for a prolonged period of time so as to prevent Plaintiff from leaving the Police Department and from joining the Louisville Police Department.

22. In September of 2014, Louisville Police Department again inquired as to the status of the investigation. The Fraternal Order of Police attorney was unable to obtain an answer to provide to Louisville Police Department. The Louisville Police Department spoke with the Fraternal Order of Police attorney as this attorney was assisting Plaintiff in obtaining further information as to the status of the investigation.

23. In October of 2014, Plaintiff spoke with Gene Ryan (Caucasian, American), President of Fraternal Order of Police. Mr. Ryan informed Plaintiff that he would speak with the Commissioner about the status of the investigation. Plaintiff was then advised by Mr. Ryan that the investigation should be closed shortly.

24. By May 2015, because Plaintiff still had not heard as to any final resolution of the investigation, Plaintiff contacted Mr. Ryan. Mr. Ryan advised that he was not being given a clear answer as to the status of the investigation. Plaintiff was later advised that the investigation had been referred to a charging committee.

25. On or about March 31, 2015, Plaintiff called the Fraternal Order of Police attorney regarding the status. At that time, Plaintiff was informed that he was going to be charged with an infraction. Plaintiff was subsequently charged with failure to discontinue the chase. Jason Jukam (Caucasian, American), the police officer driving the vehicle, and Elliott Cohen (Caucasian, American), the other police officer who was a passenger, were not charged or suspended. Plaintiff was the only person suspended.

26. On March 31, 2015, Plaintiff was advised that he was being suspended and had to turn in his service weapon and badge. Plaintiff notified the Fraternal Order of Police attorney. This occurred shortly after the Louisville Metro Police Department contacted the Baltimore Police Department for a status update on the investigation.

27. On April 8, 2015, a disciplinary hearing was held. Plaintiff remained suspended with pay.

28. On or about April 22, 2015, the case was closed per electronic records.

29. On or about September 14, 2015, a suspension hearing was held. Two charges were dismissed. Plaintiff was ordered to undergo High-Stress Training for educational purposes. This was not a form of discipline.

30. Plaintiff took the test to become a Sergeant in 2014, but was disqualified due to the prolonged investigation.

31. On several occasions between 2011 and 2015, Plaintiff heard Sgt. Gaines refer to non-native born Americans by saying, "I don't understand these people." She did not make similar comments about native-born Americans.

## COUNT I
## RACIAL DISCRIMINATION
### (Disparate Treatment)
### Title VII of the Civil Rights Act of 1964, as amended
### 42 U.S.C. §§ 2000e et seq.

32. Plaintiff hereby restates and incorporates Paragraphs 1 through 31 of this Complaint as though fully set forth herein.

33. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of his race (black) – a protected class under Title VII.

34. That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq.

35. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race (African American).

36. That the unlawful employment practices complained of above were intentional.

37. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish. Plaintiff has further incurred legal fees and court costs as a result.

38. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

6

39. That Plaintiff was similarly situated to Jason Julak (Caucasian) and Elliott Cohen (Caucasian) in his role as a police officer as they performed similar tasks.

40. That Plaintiff was discriminated against in employment based on his race, when he was treated less favorably than similarly situated non-African-Americans, including but not limited to Jason Julak (Caucasian) and Elliott Cohen (Caucasian), who were not subjected to the aforementioned acts of discrimination, including but not limited to: investigation, delay of the investigation, disqualification for promotion, suspension, and adverse impact on the furtherance of his career. A motivating factor for taking the aforementioned adverse job actions against Plaintiff was because of his race.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT II
### NATIONAL ORIGINAL DISCRIMINATION
### (Disparate Treatment)
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. §§ 2000e et seq.

41. Plaintiff hereby restates and incorporates Paragraphs 1 through 31 of this Complaint as though fully set forth herein.

42. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of his national origin (Democratic Republic of Congo) - a protected class under Title VII.

43. That the aforementioned acts constitute unlawful practices pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq.

44. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his national origin (Democratic Republic of Congo).

45. That the unlawful employment practices complained of above were intentional.

46. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

47. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

48. That Plaintiff was similarly situated to Jason Julak (American) and Elliott Cohen (American) in that they both were all police officers of the same rank and similar duties.

49. That Plaintiff was discriminated against in employment based on his race, when he was treated less favorably than similarly situated Americans, including but not limited to Jason Julak (American) and Elliott Cohen (American), who were not subjected to the aforementioned acts of discrimination, including but not limited to: investigation, delay of the investigation, disqualification for promotion, suspension, and adverse impact on the furtherance of his career. A motivating factor for taking the aforementioned adverse job actions against Plaintiff was because of his national origin.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### COUNT III
### HOSTILE WORK ENVIRONMENT
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e, et seq.

50. Plaintiff hereby restates and incorporates Paragraphs 1 through 31 of this Complaint as though fully set forth herein.

51. Sgt. Gaines' comments as to non-Americans were persistent, common, and made in Plaintiff's presence. These served to make for such a hostile work environment that he had to request a transfer to a different district in order to avoid Sgt. Gaines.

52. Further, Sgt. Gaines was in charge of the investigation into Plaintiff's actions relating to the discharge of his service weapon in 2014. This took longer than other investigations and resulted in Plaintiff's reputation and credibility being damaged, limiting his ability for promotion or seeking employment elsewhere.

53. The hostility was so severe and pervasive, that it caused Plaintiff to suffer severe emotional distress, including frequent bouts of crying, humiliation, and medical symptoms, including, but not limited to, high blood pressure. The emotional distress and humiliation occurred while Plaintiff was working, making it more difficult for him to carry on his job duties.

54. Plaintiff's immediate supervisor, Sgt. Hendrichs, and Sgt. Stiemly were aware of the hostility, as the hostile actions of Sgt. Gaines occurred in their presence and with their knowledge. Yet they failed to take any action to prevent this ongoing hostility.

55. That the aforementioned acts constitute unlawful employment practices pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

56. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee based upon his race and national origin.

57. That the unlawful employment practices complained of above were intentional.

58. That the hostile and discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Edson T. Musema, Plaintiff, demands judgment against Defendant, Baltimore City Police Department, as follows:

a. Compensatory damages in excess of $75,000.00;

b. Damages for his emotional distress and mental anguish over $75,000.00;

c. Clean Personnel Record;

d. Plus prejudgment and post judgment interest;

e. Award attorney's fees and costs, including expert witness fees, as allowed by law;

f. Award past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, lost earnings capacity, mental suffering, emotional distress, loss of enjoyment of life, humiliation, loss of reputation, and inconvenience;

g. And for such other and further relief as this Honorable Court deems just and equitable.

_____
Paul V. Bennett, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com
*Attorney for Plaintiff*

Respectfully Submitted,

_____
Elizabeth A. Marcus-Wenger, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: emarcuswenger@belawpc.com
*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff, Edson T. Musema, by and through his attorneys, Paul V. Bennett, Esq., Elizabeth A. Marcus-Wenger, Esq., and Bennett & Ellison, P.C., hereby demands that this above-captioned matter be tried before a jury on all issues so triable.

Respectfully Submitted,

_____
Paul V. Bennett, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com
*Attorney for Plaintiff*

_____
Elizabeth A. Marcus-Wenger, Esq.
Bennett & Ellison, P.C.
2086 Generals Highway, Suite 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: emarcuswenger@belawpc.com
*Attorney for Plaintiff*